SANDLER, Appellant,

v.

GOSSICK et al., Appellees.

[Cite as *Sandler v. Gossick* (1993), 87 Ohio App.3d 372.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62334.

Decided April 26, 1993.

*Alan G. Sandler, pro se; Weaver, Collick, Georgeadis & Ernewein Co., L.P.A.,* and *Clark B. Weaver,* for appellant.

*McFadden & Associates Co., L.P.A.,* and *Donald P. McFadden,* for appellee Lucius C. Gossick.

*Lucius C. Gossick,* for appellee Raymond J. Wyar.

---

NAHRA, Presiding Judge.

Plaintiff-appellant Alan G. Sandler ("Sandler") timely appeals the $7,500 jury award to defendant-appellee, Lucius C. Gossick ("Gossick"). For the reasons set forth below, we affirm.

Sandler and Gossick are attorneys whose offices were near each other in an office complex. They had a cordial business relationship. They often discussed each other's cases and gave each other advice. Sandler represented Gossick in a few matters and says he never collected a fee.

On November 11, 1985, Gossick agreed in writing to represent co-defendant-appellee Raymond J. Wyar ("Wyar") in a wrongful death case regarding an automobile accident that killed Wyar's wife (*"Wyar v. Carn"*). From about December 1985 to April 1989, Sandler was Gossick's co-counsel but was never paid. Sandler says Gossick asked him to withdraw to get a continuance. Gossick says Sandler withdrew voluntarily and without just cause. Wyar paid Gossick in full for representation in *Wyar v. Carn.*

On October 9, 1986, the IRS notified Sandler that it was auditing his 1984 tax return. The first appointment was cancelled. On December 22, 1986, the IRS notified Sandler that his 1984 tax return was to be field-audited. At this point, Sandler and Gossick's versions of the facts diverge. Sandler says he was ready to be audited but refused because Gossick told him the IRS needed a reopen letter. Gossick says Sandler said he had unreported income and asked if there was any way to avoid the audit. Gossick responded that Sandler could argue that

the first appointment's cancellation concluded the investigation and a reopen letter was needed to continue.

Sandler, claiming that a reopen letter was needed, refused the audit. The IRS disallowed his deductions, recalculated his tax and on January 15, 1988, sent a statutory notice saying he owed $19,952.98 plus penalties and interest.

Again, the two stories diverge. Sandler says he showed his notice to Gossick and Gossick said he would handle it as they handled everything else between them—for free. Gossick says he was handed the statutory notice and told to "take care of it." Gossick says he then said that from now on "I'll be charging you a fee."

Gossick says he then spent forty-six and one-half hours representing Sandler before the IRS and the tax court including legal research, document preparation and pretrial discussions. Sandler says Gossick's time was excessive and resulted from Gossick's erroneous advice.

In March 1989, the IRS dropped the case. Sandler's 1984 tax return was allowed to stand. He owed nothing. Sandler refused to pay Gossick's $7,500 fee.

On June 18, 1990, Sandler filed this suit against Gossick and Wyar to collect for his *Wyar v. Carn* work. Gossick answered and filed (1) a counterclaim to collect his fee for representing Sandler before the IRS, and (2) a motion to dismiss Wyar supported by affidavits. On September 14, 1990, Sandler filed a motion in opposition to Wyar's motion to dismiss. On October 10, 1990, the trial judge granted Wyar summary judgment by *sua sponte* treating his motion to dismiss as a motion for summary judgment without notifying the parties.

On September 4, 1990, Gossick served Sandler requests for admissions that were due October 8, 1990. On October 12, 1990, Gossick moved for summary judgment. On December 6, 1990, Sandler gave Gossick his unsigned responses to the requests for admissions. On December 11, 1990, Sandler filed his brief in opposition to Gossick's motion for summary judgment.

On February 11, 1991, Gossick was granted summary judgment because the late (fifty-nine days) and unsigned requests for admissions were deemed admitted under Civ.R. 36(A). As Sandler was deemed to have withdrawn from *Wyar v. Carn* voluntarily and without just cause, he was owed no compensation. As he was deemed to have employed Gossick regarding his 1984 tax return, the only issue for trial was just compensation for the work.

Trial began on July 17, 1991. A motion *in limine* was granted prohibiting any reference to *Wyar v. Carn*. After Gossick's evidence, Sandler moved for a directed verdict claiming that his contract with Gossick was to prevent the IRS from discovering unreported income and that compensation for such contracts is illegal in Ohio. The motion was overruled.

In closing argument, Sandler's attorney said that Gossick filed this lawsuit. In his charge the trial judge told the jury that Sandler filed the lawsuit. The jury returned a verdict for Gossick for $7,500.

I

Appellant's first assignment of error states:

"The trial court improperly granted summary judgment to defendant, Raymond Wyar."

"A court must notify all parties when it converts a motion to dismiss for failure to state a claim into a motion for summary judgment. * * * A court must notify all parties that it has converted a motion to dismiss for failure to state a claim into a motion for summary judgment 'at least fourteen days before the time fixed for hearing.' " *Petrey v. Simon* (1983), 4 Ohio St.3d 154, 4 OBR 396, 447 N.E.2d 1285, syllabus.

On October 10, 1990, the trial judge *sua sponte* converted Wyar's motion to dismiss to a summary judgment motion without notifying the parties. Summary judgment was granted, "inasmuch as there is no evidence * * * that Wyar ever promised to be responsible for payment of plaintiff and there is no evidence that Wyar received any money owed or belonging to plaintiff."

Sandler's first assignment of error is well taken. However, Sandler was not prejudiced by the trial judge's error "if, as a matter of law, the complaint does not state a claim for relief, and a motion to dismiss thereto necessarily would be required to be sustained." *Guthrie v. Liquor Control Comm.* (1988), 43 Ohio App.3d 101, 102–103, 539 N.E.2d 697, 698–699; *Pollock v. Kanter* (1990), 68 Ohio App.3d 673, 589 N.E.2d 443.

Sandler's complaint does not allege that he had a contract with Wyar. Although he alleges Gossick and his new co-counsel benefitted from Sandler's services, he does not allege that Wyar benefitted. Consequently, there is no basis for relief either in contract or *quantum meruit. Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, syllabus; *Norton v. Galion* (1989), 60 Ohio App.3d 109, 110, 573 N.E.2d 1208, 1209. The trial court could have dismissed Sandler's complaint under Civ.R. 12(B)(6). The erroneous conversion to summary judgment was not prejudicial.

Also, the disposition of Sandler's second assignment of error precludes any prejudice. Before Gossick knew about Wyar's summary judgment, he moved for summary judgment for himself and Wyar. Sandler was able to respond. Although Sandler's response and the court's summary judgment opinion focused on Gossick, the same facts, law and rationale support a summary judgment for

Wyar. As will be seen below, in that Sandler was deemed to have admitted he withdrew from *Wyar v. Carn* voluntarily and without just cause, the trial court held that he was "not entitled to compensation for services rendered." That is to say, he is not entitled to be paid by anyone. Essentially, Wyar was granted a second summary judgment untainted by the error attending the first. Remand for trial would be useless given Sandler's admissions. Any errors attendant to the first summary judgment are nonprejudicial.

■ The materials filed prior to the second summary judgment also established that Wyar completely discharged his obligation regarding representation in *Wyar v. Carn* by paying Gossick in full. Sandler's cause of action is against Gossick, not Wyar. *Gugle v. Loeser* (1944), 143 Ohio St. 362, 28 O.O. 318, 55 N.E.2d 580, paragraph two of the syllabus (where one attorney collects entire fee for co-representation, he is liable to the other). Again, as remand for trial would be purposeless, Sandler was not prejudiced by the erroneous conversion to summary judgment.

Appellant's first assignment of error is overruled.

## II

Appellant's second assignment of error states:

"The trial court erred in awarding summary judgment to defendant Lucius Gossick on the complaint."

■ Gossick's summary judgment was based on his requests for admissions being deemed admitted by Sandler's untimely and unsigned responses. It was thus established that Sandler withdrew from *Wyar v. Carn* voluntarily and without just cause. If "an attorney withdraws from a case * * * he may not recover for the services rendered to such time." *Ivins v. Elbinger Shoe Mfg. Co.* (1921), 14 Ohio App. 289, 293. Sandler, therefore, was not owed any money for his *Wyar v. Carn* work.[1]

"The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney." Civ.R. 36(A).

■ The rule is clear: "the opposing party must timely respond * * *. Failure to respond at all to the requests will result in the requests becoming

---

1. This further supports Wyar's summary judgment and the overruling of Sandler's first assignment of error.

admissions." *Cleveland Trust Co. v. Willis* (1985), 20 Ohio St.3d 66, 67, 20 OBR 364, 365, 485 N.E.2d 1052, 1053; *T & S Lumber Co. v. Alta Constr. Co.* (1984), 19 Ohio App.3d 241, 242, 19 OBR 393, 394, 483 N.E.2d 1216, 1217; *St. Paul Fire & Marine Ins. Co. v. Battle* (1975), 44 Ohio App.2d 261, 271, 73 O.O.2d 291, 296, 337 N.E.2d 806, 814. Here, Sandler's responses were fifty-nine days late and unsigned. The matters were properly deemed admitted.

Sandler suggests that *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 16 O.O.3d 329, 405 N.E.2d 293, requires the trial court to accept late responses to requests for admissions and not consider the matters admitted.

*Balson* emphasizes that under the rules the trial court "may" accept late admissions. *Id.* at paragraph two of the syllabus; Civ.R. 36(B). The circumstances must be compelling. *Cleveland Trust v. Willis*, 20 Ohio St.3d at 67, 20 OBR at 365, 485 N.E.2d at 1053. It is up to the court's discretion. *Aetna Cas. & Sur. Co. v. Roland* (1988), 47 Ohio App.3d 93, 95, 547 N.E.2d 379, 381–382.

As the trial court noted, Sandler "has not offered *any* evidence to justify his dilatory response and the Court will not infer any." Sandler has yet to offer any reason for the late response nor has he suggested that the trial court abused its discretion. In *Cleveland Trust v. Willis* the requests for admissions were returned fourteen days late and the respondent was sick. Here, the responses were fifty-nine days late for apparently no reason. The court was justified in deeming the matters admitted and granting summary judgment accordingly.

Sandler also suggests that admissions established by late responses to requests for admissions cannot establish "ultimate issues of fact." This is meritless. "A request for admission can be used to establish a fact, even if it goes to the heart of the case." *Cleveland Trust v. Willis*, 20 Ohio St.3d at 67, 20 OBR at 365, 485 N.E.2d at 1053.

Appellant's second assignment of error is overruled.

### III

Appellant's third assignment of error states:

"The trial court erred in overruling plaintiff's motion for a directed verdict on defendant's counterclaim."

In ruling on a directed verdict motion, the court construes the evidence in a light most favorable to the party opposing the motion. *Mitchell v. Cleveland Elec. Illum. Co.* (1987), 30 Ohio St.3d 92, 93, 30 OBR 295, 296, 507 N.E.2d 352, 353; *Blair v. Goff-Kirby Co.* (1976), 49 Ohio St.2d 5, 3 O.O.3d 4, 358 N.E.2d 634. The judge neither weighs the evidence nor determines the witnesses' credibility. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178–179, 423

N.E.2d 467, 469. If the court finds that reasonable minds could come to but one conclusion and that conclusion is adverse to the party opposing the motion, the court should direct the verdict. Civ.R. 50(A); see, also, *Mitchell, supra.*

Sandler argues that the contract whereby Gossick represented him against the IRS should be construed as a contract to prevent the IRS from discovering his unreported income. He argues that Ohio law prohibits court enforcement of compensation agreements for such contracts. "A contract by attorneys at law to render services to prevent the finding of an indictment against one accused or suspected of crime is illegal and void * * * and compensation stipulated to be paid for such services cannot be recovered." *Weber v. Shay & Cogan* (1897), 56 Ohio St. 116, 46 N.E. 377, paragraph one of the syllabus.

There was evidence on both sides of whether Sandler did not report income. Sandler said he did not underreport income in 1984. Gossick says he was hired to represent Sandler before the IRS concerning a statutory notice for Sandler's 1984 tax return. The trial judge could not rule that reasonable minds could only conclude that the contract was to conceal income.

There is credible evidence by which to conclude that Sandler and Gossick's contract was for Gossick to represent Sandler before the IRS regarding his statutory notice. That notice focussed on expenses. There is credible evidence that the bulk of Gossick's work related to those expenses. Gossick's preventing the IRS from getting income records to which it was not legally entitled does not make his contract one "to prevent the finding of an indictment" as in *Weber.*

"Agreements voluntarily and fairly made between competent persons are usually valid and enforceable, and the principle that agreements opposed to public policy are not enforceable should be applied cautiously and only in circumstances patently within the reasons on which that doctrine rests." *Gugle v. Loeser, supra,* at paragraph one of the syllabus. *Weber* must be limited to criminal interference with the secret workings of the grand jury.[2]

The denial of Sandler's directed verdict motion was not erroneous. His third assignment of error is overruled.

## IV

Appellant's fourth assignment of error states:

---

2. If it has any vitality at all. It has been cited once in Ohio in almost one hundred years. *Bernard v. High* (1932), 30 Ohio N.P.(N.S.) 214, 217–218 (no recovery if contract is against public policy).

"The trial court erred to the prejudice of plaintiff by allowing testimony that plaintiff was a tax evader, guilty of fraud and subject to disbarment without requiring proof or corroboration of such testimony."

■ "All relevant evidence is admissible * * *." Evid.R. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *." Evid.R. 403(A).

Determination of relevancy and whether the evidence is prejudicial "is best decided by the trial judge * * *." *Renfro v. Black* (1990), 52 Ohio St.3d 27, 31, 556 N.E.2d 150, 154. Admissibility is "within the sound discretion of the court * * *." *State v. Hill* (1967), 12 Ohio St.2d 88, 90, 41 O.O.2d 369, 371, 232 N.E.2d 394, 396. A trial court abuses its discretion if its determination is "unreasonable, arbitrary or unconscionable." *State v. Lyles* (1989), 42 Ohio St.3d 98, 100, 537 N.E.2d 221, 222.

Sandler characterizes the challenged evidence as testimony that he "was a tax evader, guilty of fraud and subject to disbarment." Actually it was matter-of-fact, unemotional testimony (1) that he did not report some income in 1984, and (2) on the possible legal consequences of such failure—conviction of tax fraud and the attendant penalties, including disbarment.

The issue at trial was a reasonable fee for Gossick representing Sandler before the IRS.[3] Gossick and his expert testified that factors determining an appropriate fee include (1) the nature and amount of the taxpayer's risk, (2) hours worked and competitive hourly rate, (3) the results, (4) the opposition's expertise, and (5) the taxpayer's ability to pay.

Evidence of unreported income could enlighten the jury on all of these matters. For example, it would explain why Gossick spent so much time refusing to produce the income records the IRS continued to request until settlement. The trial court's determination that this evidence's probative value outweighs possible prejudice is not unreasonable, arbitrary or capricious. Such evidence was properly admitted.

The testimony concerning the consequences of not reporting income could enlighten the jury regarding the taxpayer's risks, the results obtained and the opposition's expertise. The trial court's determination that this evidence's proba-

---

3. Sandler contended that Gossick was working for free and that Gossick's work resulted from Gossick's own faulty advice.

tive value outweighs possible prejudice is not unreasonable, arbitrary or capricious. Such evidence was properly admitted.

Appellant's fourth assignment of error is overruled.

## V

Appellant's fifth assignment of error states:

"The trial court erred to the prejudice of plaintiff in giving the jury defendant's requested 'curative' charge to the effect that plaintiff's counsel in his closing argument had attempted to mislead the jury."

In his closing argument, Sandler's counsel said that Gossick filed this lawsuit. Upon Gossick's request, the court included the following in its charge:

"I would also point out that the arguments of the lawyers, the expressions of the lawyers, or the comments of the lawyers are not evidence. And in that regard I would say to you that at one point in the course of closing arguments a misstatement was made, and I don't want anybody to have an improper impression from this. And that was at some point in the course of closing arguments it was stated that this lawsuit was begun by Mr. Gossick having filed the lawsuit.

"That is not how this lawsuit began. The lawsuit actually began with Mr. Sandler filing a complaint. The first paper that gets filed, we use the term complaint, against Mr. Gossick. Mr. Gossick then responded by filing a claim in court against Mr. Sandler. And that matter that Mr. Sandler first filed has been disposed of, and is not a matter for your consideration.

"So that although this case was started by Mr. Sandler filing the lawsuit, it turns around that all that's left is Mr. Gossick's claim against Mr. Sandler. I think in closing arguments it was stated somewhat differently. I wanted to correct that for you. And I'm not suggesting that has any particular relevance, but it was, the statement was at that point an erroneous statement."

The Civil Rules authorize the judge's comments:

"At the commencement and during the course of the trial, the court may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury and may acquaint the jury generally with the nature of the case." Civ.R. 51(B).

"The course and conduct of all trial proceedings, including closing argument, are committed to the sound discretion of the trial court.

" * * *

"One of the functions of the trial court is to ensure that evidence is not distorted or taken out of context by the attorneys in the course of their argument

to the jury." *Rudy v. Bodenmiller* (Dec. 11, 1990), Miami App. No. 89 CA 54, unreported, at 11, 13, 1990 WL 205109. *See Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph three of the syllabus.

The trial court's comments would be erroneous only if they were unreasonable, arbitrary or capricious.

Appellant first argues that the charge was factually incorrect. The charge is factually correct. Second, he argues that Gossick waived his right to the charge by not objecting. Civ.R. 51(B) instructions do not require an objection. Third, Sandler argues that the comment contravened a motion *in limine* excluding reference to *Wyar v. Carn.* This motion does not foreclose a curative instruction if counsel implies that *Wyar v. Carn* never happened.

Finally, Sandler argues that the instruction was prejudicial. The charge was accurate, dispassionate, did not identify who made the misstatement and suggested it was not particularly relevant. It was neither unreasonable, arbitrary nor capricious. There was no error in the instruction.

Appellant's fifth assignment of error is overruled.

## VI

Appellant's sixth assignment of error states:

"The verdict of the jury was against the manifest weight of the evidence."

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

Sandler contends that Gossick represented him for free and/or that Gossick's work was either unnecessary or resulted from Gossick's incompetence. Gossick testified that Sandler was concerned about unreported income in 1984, sought to avoid an audit, was served a statutory notice and asked Gossick to represent him concerning that notice. Gossick said he told Sandler he would be charged. Gossick then spent forty-six and one-half hours representing Sandler, including document preparation, pretrial conferences and legal research. Gossick's evidence includes the documents he claims he produced. As a result, Sandler's 1984 tax return was accepted. Gossick and his expert stated that a reasonable fee for his work was $7,500.

The jury apparently believed Gossick. Its verdict is supported by competent, credible evidence and will not be reversed.

*Judgment affirmed.*

MATIA and NUGENT, JJ., concur.