JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiffs-appellants, Gerald Knox, Jr. ("Gerald"), Sheila Knox ("Mrs. Knox"), and Gerald Knox, Sr. ("Mr. Knox"), (collectively "the Knoxes"), appeal the trial court's granting summary judgment in favor of defendant-appellee, Cleveland Heights Police Officer, Jason Hetrick ("Hetrick"). After reviewing the facts of the case and pertinent law, we affirm in part, reverse in part and remand.
 {¶ 2} On September 9, 2005, Hetrick stopped Gerald on Yellowstone Road in Cleveland Heights for driving without his lights fully illuminated. Mrs. Knox was a passenger in the vehicle and, during the course of the traffic stop, she inquired as to the reason for the stop. The Knoxes allege that Hetrick became hostile toward Mrs. Knox and repeatedly instructed her to "shut up." In response to Hetrick's statement, Gerald alleges that he told Hetrick, "Don't tell my mother to shut up." Gerald claims that, at that point, Hetrick placed him under arrest for obstructing official business, in violation of R.C. 2921.31(A).
 {¶ 3} Gerald alleges that after the arrest, Hetrick subjected him to unnecessary and unreasonable verbal abuse and intimidation. Gerald was taken to the Cleveland Heights Police Department, where he claims that the verbal abuse and intimidation continued. Several hours later, Gerald was released on a *Page 4 
$200 bond posted by his father. On March 31, 2006, the prosecutor dismissed the criminal charges against Gerald.
 {¶ 4} In September 2006, the Knoxes filed a lawsuit against Hetrick for damages they sustained as a result of the September 9, 2005 traffic stop. Gerald asserted claims against Hetrick for false arrest, malicious prosecution, assault, battery, civil conspiracy, and intentional infliction of emotional distress. Mrs. Knox asserted a claim for intentional infliction of emotional distress. Mr. Knox asserted monetary damages for false arrest and malicious prosecution, and a claim for loss of consortium based on Mrs. Knox's emotional distress claim.[1]
 {¶ 5} In July 2007, Hetrick moved for summary judgment on all claims. The Knoxes filed their brief in opposition in August 2007.[2] In January 2008, the trial court granted Hetrick's motion as to the claims of Mr. and Mrs. Knox. The trial court then granted Hetrick's motion on all of Gerald's claims in February 2008, finding that Hetrick is entitled to statutory immunity under R.C. 2744.03(A)(6) and that no genuine issues of material fact exist. *Page 5 
 {¶ 6} The Knoxes now appeal, raising four assignments of error for our review, which shall be discussed together where appropriate.
 {¶ 7} "I. The trial court erred in dismissing plaintiff-appellant Gerald P. Knox, Jr.'s claims on summary judgment.
 {¶ 8} "II. The trial court erred in dismissing plaintiff-appellant Sheila Knox's claim on summary judgment.
 {¶ 9} "III. The trial court erred in dismissing plaintiff-appellant Gerald P. Knox, Sr.'s claims on summary judgment.
 {¶ 10} "IV. The trial court erred in granting defendant-appellee Jason A. Hetrick's motion, filed on the eve of trial, for leave to respond to requests for admissions that he had ignored for almost a year."
 {¶ 11} In the first assignment of error, they argue that the trial court erred in granting summary judgment on Gerald's claims. In the second assignment of error, they argue that the trial court erred in granting summary judgment on Mrs. Knox's claim. In the third assignment of error, the Knoxes argue that the trial court erred in granting summary judgment on Mr. Knox's claims.
 Standard of Review {¶ 12} Appellate review of summary judgment is de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241;Zemcik v. LaPine Truck Sales Equip. Co. (1998), 124 Ohio App.3d 581,585, 706 N.E.2d 860. *Page 6 
The Ohio Supreme Court stated the appropriate test in Zivich v. MentorSoccer Club (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, as follows:
 {¶ 13} "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chew. Corp.
(1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresner v. Burt (1996),75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."
 {¶ 14} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E); Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359, 604 N.E.2d 138. *Page 7 
 Statutory Immunity {¶ 15} Generally, individual employees of a political subdivision, such as Officer Hetrick, are immune from civil actions to recover damages for "injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function." R.C. 2744.03(A)(6). This immunity exists unless "(a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) liability is expressly imposed upon the employee by a section of the Revised Code."[3] Id.; see, also, Lee v. Cleveland, 151 Ohio App.3d 581, 2003-Ohio-742,784 N.E.2d 1218.
 {¶ 16} "Malicious purpose encompasses exercising `malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. Caruso v. State (2000),136 Ohio App.3d 616, 620-21, citing Jackson *Page 8 v. Butler County Board of County Commissioners (1991),76 Ohio App.3d 448, 453-54. See, also, Strickland v. Tower City Management Corp. (Dec. 24, 1997), Cuyahoga App. No. 71839.
 {¶ 17} "`Bad Faith' connotes a dishonest purpose, conscious wrongdoing, intent to mislead or deceive, or the breach of a known duty through some ulterior motive or ill will." Strickland, supra.
 {¶ 18} "[R]eckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent."Caruso, supra. See, also, Ferrante v. Peters, Cuyahoga App. No. 90427,2008-Ohio-3799.
 {¶ 19} "Wantonness" is described as a "degree greater than negligence." Ferrante, supra. Wanton misconduct is the failure to exercise any care whatsoever. Fabrey v. McDonald Police Dept,70 Ohio St.3d 351, 356, 1994-Ohio-368, 639 N.E.2d 31. "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Id., citingRoszman v. Sammett (1971), 26 Ohio St.2d 94, 269 N.E.2d 420.
 {¶ 20} Courts often use "reckless" interchangeably with "wanton."Ferrante, supra. See, also, Thompson v. McNeill (1990),53 Ohio St.3d 102, *Page 9 559 N.E.2d 705. Moreover, this court has found that the terms "wanton" and "reckless" are functional equivalents of each other. Ferrante, supra, citing Sparks v. Cleveland, Cuyahoga App. No. 81715, 2003-Ohio-1172.
 {¶ 21} We note that by enacting R.C. 2744.03(A)(6), the Ohio legislature has determined that a police officer, for example, cannot be held personally liable for acts committed while carrying out official duties unless one of the exceptions to immunity is established. Cook v.Cincinnati (1995), 103 Ohio App.3d 80, 90, 658 N.E.2d 814. Therefore, we begin with a presumption of immunity.
 {¶ 22} We then turn to R.C. 2744.03(A)(6)(b) to see if this statutory exception to immunity applies to the case at hand. Gerald alleges that Hetrick's acts or omissions, both on the night of the arrest and in filling out paperwork subsequent to the arrest, were done with malice, in bad faith, or in a wanton or reckless manner. For example, Gerald points to numerous inconsistencies in Hetrick's deposition testimony, such as whether Gerald exited his vehicle during the traffic stop; if so, how many times Gerald exited the vehicle; whether Hetrick was patrolling the streets or on another traffic stop when he noticed Gerald driving with no headlights; and whether he arrested Gerald for disorderly conduct or obstructing official business. Gerald argues that a jury could conclude that Hetrick invented these inconsistencies "to establish a basis for an arrest that he knew was unlawful." *Page 10 
 {¶ 23} In addition, Hetrick alleges that Gerald was irate and "any and every curse word you could think of came out of his mouth that evening," during the traffic stop. However, not only does Gerald deny this, an eyewitness testified that Gerald did not show any hostility or act inappropriately under the circumstances, and that Gerald did not use any curse words. Furthermore, the eyewitness testified that Gerald did not get out of his vehicle until Hetrick told him to.
 {¶ 24} According to the record, Gerald, Mrs. Knox, and the eyewitness testified that Hetrick told Mrs. Knox to shut up multiple times. Hetrick denies saying this. Gerald, Mrs. Knox, and the eyewitness testified that Gerald said the following to Hetrick: "Don't tell my mother to shut up." According to Mrs. Knox and Gerald, Hetrick then said to Gerald, "Okay, dude, you are going to jail," ordered Gerald out of the car and arrested him. Finally, the eyewitness testified that after reading Hetrick's report of the incident, he would characterize Hetrick's report as a "false statement" of the events.
 {¶ 25} Additionally, according to Gerald, Hetrick called him a "f***ing faggot," and Hetrick called him and his mother "the `B' word." Hetrick also denies saying this.
 {¶ 26} The evidence in the record also reveals that Hetrick checked "no" in the "Accompanying Criminal Charge" box of the traffic citation he issued to *Page 11 
Gerald, because at the time of the initial traffic stop, Hetrick was only planning to give Gerald a citation. However, on the pink copy of the citation that was eventually given to Gerald, Hetrick changed the "no" to a "yes." The original citation does not reflect this. The following explanation is found in Hetrick's deposition testimony:
 {¶ 27} "Q: Do you see on Plaintiffs' Exhibit 1 that you originally under `Accompanying Criminal Charge' checked `No?
 {¶ 28} "A: Yes.
 {¶ 29} "Q: And then you changed that on the ticket that was given to Mr. Knox, Plaintiffs' exhibit 2?
 {¶ 30} "A: Yes.
 {¶ 31} "Q: How do you account for that change?
 {¶ 32} "A: That was after the arrest. At the initial time of the traffic stop, there was going to be no arrest made. I was going to issue the citation to him and send him on his way.
 {¶ 33} "Q: So this confirms that in fact, you did complete the filling out of the citation before you decided to arrest Mr. Knox?
 {¶ 34} "A: Yes."
 {¶ 35} After reviewing the record in a light most favorable to Gerald, we find that there are genuine issues of material fact regarding whether Hetrick *Page 12 
acted with malice, in bad faith, or wanton or reckless behavior. We base this decision on the Ohio Supreme Court's directives in Fogle v.Bentleyville (2007), 116 Ohio St.3d 301. In Fogle, the trial court denied the Village of Bentleyville's summary judgment motion based on a claim of statutory immunity under R.C. 2744.02 and 2744.03 because there were genuine issues of material fact as to whether the police officer's conduct was willful, wanton, or reckless. Bentleyville appealed, and this court dismissed the appeal for lack of a final appealable order.Fogle v. Bentleyville, Cuyahoga App. No. 88375, 2007-Ohio-2913. The Ohio Supreme Court reversed our dismissal, based on Hubbell v. Xenia,115 Ohio St.3d 77, 2007-Ohio-4839 (holding that "when a political subdivision or its employee seeks immunity, an order that denies the benefit of an alleged immunity is a final appealable order pursuant to R.C. 2744.02(C)").
 {¶ 36} In Fogle, the Ohio Supreme Court stated that "the cause is remanded to the court of appeals with instructions for the court of appeals to conduct a de novo review of the law and facts. If, after that review, only questions of law remain, the court of appeals may resolve the appeal. If genuine issues of material fact remain, the court of appeals may remand the cause to the trial court for further development of the facts necessary to resolve the immunity issue." Fogle, supra,116 Ohio St.3d at 301. Upon remand, this court affirmed *Page 13 
the trial court's denial of summary judgment, finding that genuine issues of fact existed. Fogle v. Bentleyville, Cuyahoga App. No. 88375,2008-Ohio-3660.
 {¶ 37} Ohio case law, both before and after the Ohio Supreme Court's holding in Fogle, supra, supports the notion that questions of fact regarding immunity are enough to overcome summary judgment. SeeRankin v. Cuyahoga County Dept. of Children and Family Services (2008),118 Ohio St.3d 392, 399 (affirming this court's decision to remand an immunity case for further development of the facts because the record "is incomplete as to whether genuine issues of material fact exist regarding [the county employees'] alleged reckless conduct");Hubbard v. Shaffer, Cuyahoga App. No. 89870, 2008-Ohio-1940 (holding that "[s]ince genuine issues of material fact exist as to whether Officer Shaffer was responding to an emergency call and whether his actions amounted to wanton, willful, or reckless misconduct, we find that the trial court did not err in denying the city's motion for summary judgment"); Estate of Graves v. City of Circleville, Ross App. No. 06CA2900, 2008-Ohio-6052 (holding that reasonable minds could reach different conclusions regarding whether the defendant acted in a wanton or reckless manner and affirming the trial court's denial of summary judgment); Lowry v. Ohio State Highway Patrol (Feb. 27, 1997), Franklin App. No. 96API07-835 (holding that "[w]hen an issue turns upon the credibility of a witness because his testimony must be believed to resolve the *Page 14 
issue and the surrounding circumstances place the credibility of the witness in question, the matter should be resolved by the trier of fact"). See, also, Condit v. Clermont (1994), 93 Ohio App.3d 166, 174
(holding that the "issue of actual malice calls into question the defendant's state of mind. It does not readily lend itself to summary disposition. *** Reasonable minds could differ as to whether appellant demonstrated actual malice with convincing clarity, and there are issues of fact which a jury must be permitted to decide").
 {¶ 38} In the instant case, we find that genuine issues of material fact exist as to whether Hetrick acted with malice, in bad faith, or in a wanton or reckless manner. The court erred in granting summary judgment to Hetrick on the issue of immunity, and the cause is remanded to the trial court for further development of the facts necessary to resolve the immunity issue.
 Gerald's Claims False Arrest {¶ 39} False arrest is defined as the unlawful restraint by one person of the physical liberty of another. Rogers v. Barbera (1960),170 Ohio St. 241, 243, 164 N.E.2d 162, citing 22 American Jurisprudence, 353, False Imprisonment, Sections 2 and 3. The detention in a "false arrest is by reason of an asserted legal authority to enforce the processes of the law." Id. *Page 15 
 {¶ 40} Gerald was charged with obstructing official business, although the Cleveland Heights incident report states that Gerald was arrested for disorderly conduct.[4] R.C. 2921.31(A) governs obstructing official business, and it states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 41} It is undisputed in the record that Hetrick completed writing the ticket before he arrested Gerald. However, according to Hetrick he did not give the ticket to Gerald until they got to the police station because Gerald became too disruptive. On the other hand, according to Gerald, Mrs. Knox, and the eyewitness, Gerald did nothing to hamper or impede Hetrick from giving the citation to him, and Gerald was arrested immediately after he remarked, "Don't tell my mother to shut up." Gerald, Mrs. Knox, and the eyewitness testified that Gerald was sitting in the car when this happened and that he never exited the car until Hetrick told him to when Hetrick arrested him. Hetrick, on the other hand, wrote in the incident report that Gerald attempted to exit the vehicle *Page 16 
without authorization; then Hetrick testified that Gerald actually exited the vehicle, more than once, without authorization.
 {¶ 42} We are mindful that the question before us is not whether there was sufficient evidence that Gerald obstructed official business; rather, we are asked whether Hetrick had reasonable cause to arrest Gerald. And we conclude that reasonable minds could differ, depending upon whose version of events is more credible, as to whether Hetrick had legal justification to arrest Gerald. See, State v. Stayton (1998),126 Ohio App.3d 158, 164, in which the First District Ohio Court of Appeals held that, "provided that the language does not constitute fighting words, a citizen's verbal assault on a police officer does not, standing alone, constitute criminal conduct." Looking at the facts in a light most favorable to Gerald, as we must, there is a genuine issue of material fact regarding Gerald's allegations of false arrest, and the court erred by granting summary judgment on this claim.
 Malicious Prosecution {¶ 43} To sustain a claim of malicious prosecution, the Knoxes must prove: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." Trussell v. General Motors Corp. (1990),53 Ohio St.3d 142, 144, 559 N.E.2d 732. *Page 17 
 {¶ 44} In Melanowski v. Judy (1921), 102 Ohio St. 153, 131 N.E. 360, the Ohio Supreme Court addressed actions for malicious prosecutions, where "malice" and "lack of probable cause" are essential elements to the offense. The Court held that "in an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice." Id., paragraph one of the syllabus. Therefore, "malice becomes material only if a lack of probable cause appears."Waller v. Foxx (Oct. 6, 1982), Hamilton App. No. C-810568, citingMiller v. Stacy (2nd Dist. 1956), 145 N.E.2d 312, 315. Furthermore, for the purposes of malicious prosecution, malice is defined as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." Criss v.Springfield Township (1990), 56 Ohio St.3d 82, 85, 564 N.E.2d 440.
 {¶ 45} In reviewing whether Hetrick had probable cause to arrest Gerald, we must determine whether the facts known to Hetrick at the time of the arrest would warrant a person of reasonable caution to believe that an offense had been committed. Beck v. Ohio (1964), 379 U.S. 89,96, 85 S.Ct. 223, 13 L.Ed.2d 142; State v. Timson (1974),38 Ohio St.2d 122, 311 N.E.2d 16. In Brinegar v. United States (1949), 338 U.S. 160,175, 93 L.Ed. 1879, 69 S.Ct. 1302, the United States Supreme Court described the concept of probable cause as follows: "In dealing with probable cause *** as the very name implies, we deal with probabilities. *Page 18 
These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."
 {¶ 46} Moreover, "[p]robable cause exists where `the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar, supra, at 175-76, quotingCarroll v. United States (1923), 267 U.S. 132, 162, 45 S.Ct. 280,69 L.Ed. 543.
 {¶ 47} As stated in our above analysis, there are genuine issues of material fact as to whether Hetrick had legal justification to arrest Gerald and whether Hetrick acted with malice for the purpose of statutory immunity. This same analysis can be applied to the questions of whether Hetrick had probable cause to arrest Gerald and whether he acted with malice for the purpose of establishing malicious prosecution. Simply put, the Knoxes' version of what happened differs significantly from Hetrick's version, and issues of credibility are to be decided by the trier of fact. See Helms v. Cahoon, Summit App. No. 20527, 2002-Ohio-217 (holding that "[t]he trial court cannot weigh credibility when considering evidentiary material presented in favor of, or opposition to, a motion for summary judgment"). *Page 19 
 {¶ 48} Accordingly, the court erred when it granted Hetrick's motion for summary judgment on Gerald's claim for malicious prosecution.
 Assault and Battery {¶ 49} An assault is defined as "the willful threat to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact; the threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching." Strickland, quoting Smith v. JohnDeere (1993), 83 Ohio App.3d 398, 406, 614 N.E.2d 1148. Furthermore, "[a]n essential element of *** assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact." Id.
 {¶ 50} To be liable for battery, "the actor must know with certainty that the act in which he is engaging will bring about harmful *** or offensive contact." Id., citing Smith, supra.
 {¶ 51} The Knoxes argue that the lack of probable cause establishes that any force used to arrest Gerald is sufficient to pursue causes of action for assault and battery. However, a review of the record reveals that Hetrick did not use unreasonable force when he arrested Gerald and transported him to the police station. Thus, Gerald's assault and battery claims fail as a matter of law. *Page 20 
 Civil Conspiracy {¶ 52} A civil conspiracy is "`a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" Williams v. Aetna Fin.Co., 83 Ohio St.3d 464, 475, 1998-Ohio-294, 700 N.E.2d 859, quotingKenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, 419,650 N.E.2d 863, 866.
 {¶ 53} The "`malicious combination to injure' does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act."Gosden v. Louis (1996), 116 Ohio App.3d 195, 219-220, 687 N.E.2d 481, quoting Pumphrey v. Quillen (1955), 102 Ohio App. 173, 177-178,141 N.E.2d 675.
 {¶ 54} The Knoxes maintain that the record contained sufficient evidence that malicious combination existed between Hetrick, Officer Guyton, and other Cleveland Heights officers who participated in inflicting Gerald's injuries. Gerald testified that Guyton dragged him from the police cruiser into the booking station and, when Gerald was taking off his shoes, Guyton removed the chair from beneath Gerald's feet and threw it down the hallway.
 {¶ 55} However, there is no evidence that there was a "common understanding" between Hetrick and Guyton to injure Gerald. Therefore, Gerald's civil conspiracy claim must fail as a matter of law. *Page 21 
 Intentional Infliction of Emotional Distress {¶ 56} To establish intentional infliction of emotional distress ("IIED"), the Knoxes must prove: "a) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; c) that the actor's actions were the proximate cause of the plaintiffs psychic injury; and d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it." Smullen v. InterfactPolygraphs, Inc. (Oct. 3, 1991), Cuyahoga App. No. 58722, citingPyle v. Pyle (1983), 11 Ohio App.3d 31, 463 N.E.2d 98, paragraph two of the syllabus.
 {¶ 57} "Extreme and outrageous conduct is conduct that goes beyond all possible bounds of decency and is so atrocious that it is `utterly intolerable in a civilized society.' `Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' are insufficient to sustain a claim for relief." (Internal citations omitted.) Charles Gruenspan Co. v. Thompson, Cuyahoga App. No. 80748, 2003-Ohio-3641, ¶ 37.
 {¶ 58} The Knoxes maintain that the record demonstrates Gerald suffered the requisite emotional injury to sustain an IIED claim. He testified that he *Page 22 
could not concentrate in school because his mind was always on what happened the night he was arrested. He further testified that he still suffers from lack of sleep and poor appetite. He did acknowledge that he did not seek medical assistance for his psychological injuries, but he did seek pastoral counseling.
 {¶ 59} However, there is no evidence in the record that Hetrick intended to cause emotional distress or should have known that his actions would result in serious emotional distress to Gerald. Furthermore, there is no evidence that Hetrick's behavior rose above "mere insults" or "indignities." Thus, we find that Gerald's IIED claim fails as a matter of law.
 {¶ 60} In conclusion regarding Gerald's claims, we find that there are genuine issues of material fact regarding the issues of immunity, false arrest, and malicious prosecution. Additionally, we find that the court properly granted summary judgment on Gerald's claims for assault, battery, civil conspiracy, and IIEC. Thus, the first assignment of error is overruled in part and sustained in part.
 Mrs. Knox's Intentional Infliction of Emotional DistressClaim {¶ 61} In their second assignment of error, the Knoxes argue that the court erred in dismissing Mrs. Knox's IIED claim. Mrs. Knox claims that she was forced to watch Hetrick arrest her son and haul him off to jail for no apparent *Page 23 
reason. As a result, she now feels vulnerable and suffers from nightmares. She testified that her "heart starts to pound" whenever she sees a police officer.
 {¶ 62} However, Mrs. Knox's claim is based on what she observed of Gerald's arrest. She fails to provide any evidence that Hetrick intended to cause her harm. Thus, for the same reasons stated in our discussion of Gerald's IIED claim, Mrs. Knox's claim also fails as matter of law.
 {¶ 63} Therefore, we find that the trial court did not err in granting summary judgment in favor of Hetrick on Mrs. Knox's IIED claim. Accordingly, the second assignment of error is overruled.
 Mr. Knox's Claims {¶ 64} In the third assignment of error, the Knoxes argue that the court erred in dismissing Mr. Knox's loss of consortium, false arrest, and malicious prosecution claims.
 Loss of Consortium {¶ 65} "`Consortium' consists of society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace." Clouston v. Remlinger Oldsmobile Cadillac, Inc. (1970),22 Ohio St.2d 65, 66 258 N.E.2d 230. However, a loss of consortium claim is dependant upon the defendant having committed a legally cognizable tort upon the spouse who *Page 24 
suffers bodily injury. Donnelly v. Herron (Jan. 21, 1999), Cuyahoga App. No. 74324, citing Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84,585 N.E.2d 384.
 {¶ 66} Thus, Mr. Knox can only pursue a loss of consortium claim if Mrs. Knox has a legally cognizable claim. Since Mrs. Knox's IIED claim fails, we find that Mr. Knox's loss of consortium claim also fails as a matter of law.
 False Arrest and Malicious Prosecution Claims {¶ 67} The Knoxes also argue that as a result of Hetrick's false arrest and malicious prosecution of Gerald, Mr. Knox suffered $20 in damages, which was the unrefunded portion of Gerald's bond. However, because Mr. Knox was not the arrestee or detainee in the instant action, he cannot meet the elements of being arrested or being the subject of a prosecution. Gerald's false arrest and malicious prosecution claims — and not his father's — are the proper vehicles to potentially recover monetary damages associated with Gerald's alleged false arrest. See, generally, 32 Am. Jur. 2d False Imprisonment 137 (stating that a plaintiff may recover for injuries that are "foreseeable or natural and probable consequences of" a false arrest).
 {¶ 68} Therefore, we find that the trial court did not err in granting summary judgment in favor of Hetrick on Mr. Knox's claims. Accordingly, the third assignment of error is overruled. *Page 25 
 Requests for Admissions {¶ 69} In the fourth assignment of error, the Knoxes argue that the court erred in granting Hetrick leave to respond to their requests for admissions. They maintain that under Civ. R. 36(A), Hetrick's failure to respond resulted in the requests becoming admissions.
 {¶ 70} The decision to accept late admissions is a matter within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. Hayes v. Walt Ward Constr. Co. (Nov. 21, 1996), Cuyahoga App. No. 69557; see, also, Aetna Cas. Sur. Co. v.Roland (1988), 47 Ohio App.3d 93, 547 N.E.2d 379. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 71} Civ. R. 36(A) provides in pertinent part: "Each matter of which an admission is requested *** is admitted unless, within a period designated in the request, not less than twenty-eight days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney." *Page 26 
 {¶ 72} Although Civ. R. 36(A) deems requests admitted if no response is made within the allotted time, we note that a judge has discretion to allow withdrawal or amendment of the requests under Civ. R. 36(B). SeeSandler v. Gossick (1993), 87 Ohio App.3d 372, 622 N.E.2d 389, where this court held that the failure to respond to the requests will result in the requests becoming admissions. See, also, Cleveland Trust Co. v.Willis (1985), 20 Ohio St.3d 66, 485 N.E.2d. 1052, and Balson v.Dodds (1980), 62 Ohio St.2d 287, 405 N.E.2d 293, where the Ohio Supreme Court held that when compelling circumstances exist, the trial court may accept late admissions.
 {¶ 73} In the instant case, the Knoxes served their first set of requests for admissions in February 2007. On January 14, 2008, the Knoxes' counsel sent a letter to defense counsel advising that a response to the Knoxes' first set of requests for admissions had not yet been received. On January 18, 2008, Hetrick sought leave to respond to the Knoxes' requests. Hetrick's reason for delay was due to a transition with the assistant director of law. The trial court granted Hetrick's motion giving him until February 16, 2008 to respond.
 {¶ 74} Because the judge presiding over this matter "has a greater ability to assess the parties' ability and willingness to cooperate in discovery and *** has broad discretion in controlling the conduct of discovery and in issuing sanctions for violations," we find that the court's granting of Hetrick's motion for leave to *Page 27 
respond to the Knoxes' first set of requests for admission was not an abuse of discretion. Cheek v. Granger Trucking (Nov. 1, 2001), Cuyahoga App. No. 78805; see, also, Hayes, supra.
 {¶ 75} Therefore, appellants' fourth assignment of error is overruled.
 {¶ 76} This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J.*, CONCURS
COLLEEN CONWAY COONEY, A.J., CONCURS IN PART AND DISSENTS IN PART. (SEE ATTACHED CONCURRING AND DISSENTING OPINION)
[1] Mr. Knox was not arrested, but asserted claims for false arrest and malicious prosecution because only $180 of the $200 he paid for Gerald's bond was returned. Thus, Mr. Knox alleges that he suffered $20 in monetary damages.
[2] Earlier that year, in February 2007, the Knoxes served requests for admissions to Hetrick. Hetrick did not respond to the requests prior to the close of discovery in May 2007. On January 18, 2008, Hetrick moved for leave to respond to the Knoxes' requests. The trial court granted the motion on January 23, 2008.
[3] The parties do not dispute that Hetrick was acting within the scope of his employment and official responsibilities as an employee of the City of Cleveland Heights at the time of Gerald's traffic stop and subsequent arrest. Additionally, neither party alleges that liability is expressly imposed by a statute. Therefore, our review focuses on R.C. 2744.03(A)(6)(b), whether Hetrick's acts "were with malicious purpose, in bad faith, or in a wanton or reckless manner ***."
[4] "[K]nowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants." United States v.Anderson (1991), 923 F.2d 450, 457.
* (SITTING BY ASSIGNMENT: JUDGE JAMES D. SWEENEY, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS.) *Page 28