[Cite as *Frank v. S.W. Ohio Regional Transit Auth.*, 2020-Ohio-5497.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EMILY FRANK, | : | APPEAL NO. C-200015 |
| | | TRIAL NO. A-1800441 |
| and | : | |
| LYNN FRANK, | : | *O P I N I O N.* |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| | : | |
| SOUTHWEST OHIO REGIONAL TRANSIT AUTHORITY, | : | |
| and | : | |
| TYRONE PATRICK, | : | |
| Defendants-Appellants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part and Appeal Dismissed in Part

Date of Judgment Entry on Appeal:  December 2, 2020

*Colombo Law, Dino Colombo* and *Travis T. Mohler*, for Plaintiffs-Appellees,

*McCaslin, Imbus & McCaslin, Thomas J. Gruber* and *Michael P. Cussen*, for Defendants-Appellants.

**ZAYAS, Judge.**

{¶1}    Defendants-appellants, the Southwest Ohio Regional Transit Authority ("SORTA") and Tyrone Patrick, appeal the decision of the Hamilton County Court of Common Pleas denying their motion for summary judgment claiming immunity on the basis of political subdivision immunity pursuant to R.C. Chapter 2744.   We affirm in part and dismiss in part.

### I.  Background and Procedural History

{¶2}    On January 27, 2016, Emily Frank and her father, Stephen Frank, were in a crosswalk at the intersection of Erie Avenue and Edwards Road in Cincinnati, Ohio, when they were struck by a SORTA bus driven by Patrick, a long-time SORTA bus driver.   As a result of the accident, Stephen died, and Emily sustained serious injuries to her leg.

{¶3}    On January 24, 2018, Emily and her mother, Lynn Frank, filed a nine-count complaint against SORTA and Patrick.   Against SORTA, the Franks alleged negligent training (Count I), negligent entrustment (Count II), negligent retention (Count III), negligence through vicarious liability (Count V), and negligent infliction of emotional distress through vicarious liability (Count VII).   Against Patrick, the Franks alleged negligence (Count IV) and negligent infliction of emotional distress (Count VI).  The Franks alleged against both SORTA and Patrick a survivorship claim (Count VIII) and a wrongful-death claim (Count IX).   SORTA and Patrick answered the complaint, and the parties proceeded with discovery.

{¶4}    On November 13, 2019, the Franks filed a motion for leave to amend their complaint to add allegations of "reckless" conduct or "recklessness" to the

2

claims against SORTA for negligent training, negligent entrustment, and negligent retention. On November 14, 2019, SORTA and Patrick filed a motion for summary judgment. SORTA and Patrick argued that Patrick was immune from the Franks' suit because he was acting in the scope of his employment and because the record was "devoid of any evidence that [] Patrick acted with a malicious purpose, in bad faith, or in a wanton or reckless manner." SORTA argued that it was immune from the Franks' claims of negligent entrustment, negligent training, and negligent retention under the doctrine of sovereign immunity.

{¶5} On December 17, 2019, the trial court granted the Franks' motion for leave to amend their complaint and denied SORTA and Patrick's motion for summary judgment. SORTA and Patrick now appeal, asserting three assignments of error.

## II. Analysis

### A. The Franks' Amended Complaint

{¶6} In their first assignment of error, SORTA and Patrick argue that the trial court erred in allowing the Franks leave to amend their complaint. We find that we are without jurisdiction to consider this assignment.

{¶7} A court of appeals does not have jurisdiction to rule upon the trial court's interlocutory decisions; rather, it has jurisdiction to review final appealable orders. R.C. 2505.02(B). Generally, a trial court's order granting a motion for leave to amend the complaint is an interlocutory order. *See Supportive Sols., L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 10. However, in circumstances involving political-subdivision immunity, a political subdivision has the right to an interlocutory appeal under R.C. 2744.02(C) when the order "denies a political subdivision * * * the benefit of an alleged

3

immunity from liability as provided in this chapter or any other provision of the law [it] is a final order." *See id.* at ¶ 6.

{**¶8**}    SORTA claims the Franks' amendment "allows for a possibility of liability, [which] denied the benefit of the immunity granted under R.C. 2744," yet none of the immunities contained in R.C. 2744.03 were affected. *Compare Supportive Solutions* at ¶ 17-20 (trial court's denial of political subdivision's motion for leave to file an amended answer to raise the affirmative defense of political-subdivision immunity deprived the political subdivision from enjoying the benefits of the alleged immunity).   SORTA was required to prove its entitlement to immunity regardless of whether the Franks were granted leave to amend their complaint to add allegations regarding recklessness.   In other words, the court's order granting the Franks' leave did not foreclose SORTA's ability to demonstrate alleged immunity and was therefore not a final order under R.C. 2744.02(C). *See Supportive Solutions* at ¶ 20.

{**¶9**}    Consequently, SORTA and Patrick's appeal of the trial court's decision granting the Franks' motion for leave to amend their complaint is not properly before us.

## B.  Patrick's Claim of Immunity

{**¶10**}   In their second assignment of error, SORTA and Patrick argue that the trial court erred in denying summary judgment in favor of Patrick because he was immune from suit under R.C. Chapter 2744.

{**¶11**}   "We review the denial of sovereign immunity de novo." *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 21.   We also review a trial court's ruling on a motion for summary judgment de novo. *See Wal-Mart Realty Co. v. Tri-Cty. Commons Assoc., LLC*, 1st Dist. Hamilton No. C-160747,

4

2017-Ohio-9280, ¶ 5. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that:

> (1) [n]o genuine issue as to any material fact remains to be litigated;
>
> (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). The rule further provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

{¶12} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* If, however, the moving party meets its initial burden, "the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* at 293.

{¶13} The Political Subdivision Tort Liability Act ("Act"), as codified in R.C. Chapter 2744, establishes governmental immunity for political subdivisions and their employees. The Act "requires a three-tiered analysis to determine whether a political subdivision should be allocated immunity from civil liability." *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 10, citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental or a proprietary function." *Anderson v. Massillon*, 5th Dist. Stark No. 2013CA00144, 2014-Ohio-2516, ¶ 35, citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 733 N.E.2d 1141 (2000); R.C. 2744.02(A)(1). However, political-subdivision immunity is not absolute. R.C. 2744.02(B); *see Cater*. "The second tier of the analysis requires a court to determine whether any of the five listed exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Anderson* at ¶ 35. "If any of the exceptions to immunity do apply, and if no defense in that section applies to negate the liability of the political subdivision under that section, then the third tier of the analysis requires an assessment of whether any defenses in R.C. 2744.03 apply to reinstate immunity." *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 15, citing *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781.

{¶14} The three-tiered analysis applicable to a political subdivision does not apply when determining whether an employee of a political subdivision will be liable for harm caused to an individual. *See Anderson* at ¶ 37, citing *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17. Rather, R.C.

2744.03(A)(6) controls. Under R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability, unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

{¶15} At issue in this case is the applicability of the exception to immunity set forth in R.C. 2744.03(A)(6)(b), specifically, whether, in striking the Franks while driving a SORTA bus, Patrick acted in a "reckless manner." The Franks do not contend that Patrick acted with malicious purpose, in bad faith, or in a wanton manner.

{¶16} Generally, whether an employee of a political subdivision is entitled to R.C. 2744.03(A)(6) immunity is a question of law for determination by the court. *See, e.g.*, *Conley v. Shearer*, 64 Ohio St.3d 284, 291, 595 N.E.2d 862 (1992), and *Feitshans v. Darke Cty.*, 116 Ohio App.3d 14, 19, 686 N.E.2d 536 (2d Dist.1996). However, whether the employee acted in a wanton or reckless manner under R.C. 2744.03(A)(6)(b) is generally a question of fact for the jury. *See Gates v. Leonbruno*, 2016-Ohio-5627, 70 N.E.3d 1110, ¶ 37 (8th Dist.), citing *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994). Accordingly, a trial court may not grant summary judgment to a political-subdivision employee on the basis of R.C. 2744.03(A)(6) immunity "unless, based on the evidence, reasonable minds could conclude only that the employee did not act in a wanton or reckless manner. If reasonable minds could disagree on this issue, then a trial court cannot properly

7

grant an employee summary judgment based upon statutory immunity under R.C. 2744.03(A)(6)." *Gates* at ¶ 37.

{¶17}  "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 34, citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990*)*, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see Black's Law Dictionary* (11th Ed.2019) (explaining that reckless conduct is characterized by "a substantial and unjustifiable risk of harm to others" and "a conscious (sometimes deliberate) disregard of or indifference to that risk," but the actor does not desire harm).

{¶18}  The standard for establishing reckless conduct is "high" and requires consideration of the "totality of the circumstances." *See, e.g.*, *Adams v. Ward*, 7th Dist. Mahoning No. 09 MA 25, 2010-Ohio-4851, ¶ 27.  As such, the determination of whether a political-subdivision employee acted in a reckless manner in operating a motor vehicle in the course of his employment is highly dependent on the facts of each case. *See id.*; *Gates* at ¶ 39.

{¶19}  The facts in the case sub judice are that on the evening of January 27, 2016, Stephen and Emily Frank were at the corner of Erie Avenue and Edwards Road waiting for the crosswalk-signal to cross the street, while at the same time Tyrone Patrick was driving a SORTA bus on its typical route southbound on Edwards Road towards the intersection of Erie Avenue where Patrick was intending to make a left-hand turn.  Earlier along the bus route, while in Norwood, Patrick purchased a cup of chili from Wendy's and ate the chili on the bus.  Then, while at the intersection of

Edwards Road and Erie Avenue, while the traffic light was red and as it turned green, Patrick threw away the cup of chili. When the crosswalk-signal turned green, signaling the permission to cross the street, the Franks began to cross Erie Avenue within the crosswalk. As the Franks were in the crosswalk, Patrick was in the intersection waiting for oncoming traffic to pass so that he could make the left-hand turn onto Erie Avenue. Once traffic had passed, Patrick made the left-hand turn, striking the Franks while they were still in the crosswalk. Stephen Frank was hit and dragged approximately 30 feet before the bus ran over his torso and head, killing him. Emily Frank was hit and thrown to the side such that the left rear tire of the bus ran over her left leg, seriously injuring her ankle and foot.

{¶20} SORTA's "Mandatory Turn Procedures," a manual for SORTA bus drivers, requires left-hand turns to be made at "no more than 5 miles per hour" and states that drivers should "not accelerate through the turn." Patrick made the left-hand turn through the intersection at approximately 13 to 14 m.p.h. when he hit the Franks in the crosswalk. The "Mandatory Turn Procedures" also require drivers to "continually scan the intersection," "paying particular attention to crosswalks and corners that will be affected" by the turn. Patrick said that he did not see the Franks prior to hitting them. Patrick acknowledged that he did not follow SORTA's "Mandatory Turn Procedures," on which he had been retrained earlier in January, and admitted that failure to follow the procedures could result in "devastating consequences," including pedestrian injury or death.

{¶21} In his affidavit, Patrick affirmed that at the time he was operating his bus at the intersection and through his turn he was not on his cell phone, was not talking to any passengers and was not distracted. Patrick Affidavit ¶ 24. Likewise, in his deposition, Patrick testified that when he was at the intersection and preparing

for and making a left-hand turn, he was not "driving while distracted." Patrick Deposition 61:16-61:21. However, Patrick testified later in the same deposition that "the most likely reason [he] did not see [the Franks] at all in the crosswalk is because [he was] distracted," *id.* 75:12-75:23, and that he was "driving the bus and preparing to turn while distracted," *id.* 66:21-66:24.

{¶22} The Franks argued in their opposition to summary judgment that Patrick was reckless because he violated "virtually every single safety rule set forth in SORTA's Mandatory Turn Procedures that were designed to protect pedestrians," and "made the turn at almost three times the maximum turning speed required by SORTA's training manuals." The Franks also argued that Patrick knew of the safety rules in the training manuals, and testified in his deposition that it was a known risk that if he did not follow the bus safety rules there could be devastating consequences, including pedestrian injury or death. SORTA and Patrick argue that the violation of departmental policy is not per se reckless conduct, and that while Patrick acted negligently, there is no evidence of recklessness.

{¶23} The Ohio Supreme Court held in *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, that indeed "the violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct," but that such violation "may be relevant to determining the culpability of a course of conduct." Quoting the Restatement, the court said:

> In order that the breach of [a] statute constitute reckless disregard for the safety of those for whose protection it is enacted, the statute must not only be intentionally violated, but the precautions required must be such that their omission will be recognized as involving a high

degree of probability that serious harm will result. 2 Restatement of

the Law 2d, Torts, Section 500, Comment e (1965).

Accordingly, "[w]ithout evidence of an accompanying knowledge that the violations will in all probability result in injury, evidence that policies have been violated demonstrates negligence at best." (Internal quotations omitted.) *Anderson* at ¶ 38.

{¶24} Here, Patrick admitted in his deposition testimony that he knew SORTA's "Mandatory Turn Procedures," as he had been retrained on them only three weeks prior to the accident. Additionally, he admitted in his testimony that failing to adhere to the turn procedures would likely result in "devastating consequences." As explained by *Anderson*, Patrick's knowledge of the probable result from the violation of SORTA's procedures is relevant to determining his culpability. *See Anderson* at ¶ 37-38. Thus, there are questions of fact as to whether Patrick acted recklessly.

{¶25} In addition, Patrick's affidavit in support of summary judgment contradicts his deposition testimony. In his affidavit, Patrick stated that he was not distracted while operating the bus in the intersection where he hit the Franks. In his deposition, he initially said he was not distracted but later said he was distracted. "If an affidavit of a movant for summary judgment is inconsistent with the movant's former deposition testimony, summary judgment may not be granted in the movant's favor." *Pettiford v. Aggarwal*, 126 Ohio St.3d 413, 2010-Ohio-3237, 934 N.E.2d 913, ¶ 24, quoting *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47. This inconsistency—in combination with Patrick's admission that he knew violating SORTA's bus safety rules could result in devastating consequences, including pedestrian injury or death—creates a material issue of fact, which precludes summary judgment in Patrick's favor. Therefore, we overrule SORTA and Patrick's second assignment of error.

11

## C. SORTA's Claim of Immunity

{¶26} In their third assignment of error, SORTA and Patrick argue that the trial court erred in denying summary judgment in favor of SORTA on Counts I, II, III, V, and VII of the Franks' complaint.

{¶27} As explained above, the general rule is that a political subdivision is immune from liability pursuant to R.C. 2744.02(A)(1). However, the Franks alleged an exception to immunity under R.C. 2744.02(B)(2), which provides that a political subdivision is liable for "injury, death, or loss to person or property that is caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivision." This would include negligent training, retention, and entrustment claims. *See Matter v. Athens*, 2014-Ohio-4451, 21 N.E.3d 595 (4th Dist.) (discussing similar claims); *Young v. Cuyahoga Cty. Bd. of Mental Retardation*, 8th Dist. Cuyahoga No. 97671, 2012-Ohio-3082 (same).

{¶28} Before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, a plaintiff must establish the following: (1) that the negligence arose out of a "proprietary function" and (2) the elements required to sustain a negligence action. *See Gabel v. Miami E. School Bd.*, 169 Ohio App.3d 609, 2006-Ohio-5963 864 N.E.2d 102, ¶ 39-40 (2d Dist.).

{¶29} R.C. 2744.01(G) defines proprietary functions and provides in section (2)(c) that "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, a * * * busline or other transit company" is a proprietary function. In this case, the Franks' allegation that SORTA's operation of the busline necessarily includes the supervision, training, and retention of bus drivers as part of its proprietary function is well taken. After all, a busline cannot operate without

drivers. *See Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, ¶ 20 (discussing actions that constitute a proprietary function).

{¶30} The elements of a claim for relief for negligent hiring, retention, and supervision are: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Retuerto v. Berea Moving Storage & Logistics*, 2015-Ohio-2404, 38 N.E.3d 392, ¶ 55 (8th Dist.).

{¶31} Here, it is undisputed that Patrick is an employee of SORTA and was acting within his scope of employment at the time of the accident. The Franks presented evidence demonstrating that in the past ten years of Patrick's employment with SORTA, he was involved in 39 accidents prior to the one that killed Stephen Frank. The Franks also presented evidence of Patrick's reprimands for previous distracted-driving incidents and evidence demonstrating that by SORTA's own criteria, Patrick should have been terminated on multiple occasions. The Franks also demonstrated that SORTA had knowledge of Patrick's driving history. In opposition to SORTA's motion for summary judgment, the Franks submitted an affidavit of their expert witness, an expert on commercial bus operations, detailing the reasons for which Patrick should have been previously terminated. The Franks alleged that SORTA negligently trained Patrick by failing to inform him on appropriate times and locations for breaks and/or meals and the dangers of distracted driving, and alleged that SORTA negligently entrusted Patrick with a bus and negligently retained him despite his dangerous driving history. The Franks alleged that their injuries and the

death of Stephen Frank were proximately caused by SORTA's breach of its duties of care.

{¶32} SORTA, on the other hand, did not present any evidence or even any argument that it did not act negligently in the training, entrustment, or retention of Patrick. Further, as the movant, SORTA did not show that there was an absence of material factual issues as to its negligence. Meanwhile, the evidence, viewed in a light most favorable to the Franks, demonstrates that they presented sufficient evidence regarding each element of a claim for negligent supervision, hiring, and retention. Therefore, SORTA failed to meet its burden to establish the inapplicability of R.C. 2744.02(B)(2) and was not entitled to a summary-judgment determination of immunity in the second tier of the three-tiered analysis.

{¶33} Rather than mount a defense to negligence, SORTA seems to have skipped to the third tier by simply claiming immunity under R.C. 2744.03(A)(3) and (A)(5). Under the statute, if an R.C. 2744.02(B) exception to immunity applies, "the political subdivision may still establish nonliability through a defense or immunity listed in R.C. 2744.03(A)." *Elias v. City of Akron*, 9th Dist. Summit No. 29107, 2020-Ohio-480, ¶ 20. SORTA asserted two defenses stated in R.C. 2744.03(A):

> (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
>
> * * *
>
> (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of

14

judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

**{¶34}** SORTA contends that its employees exercised judgment and discretion with regard to the training, entrustment, and retention of Patrick. SORTA argues that it is immune from liability because the Franks "failed to assert SORTA acted maliciously, in bad faith, or in a wanton or reckless manner"—but for the belated addition of the words "reckless" and "recklessness" to their amended complaint. SORTA's contention reflects an oversight of "its dual burdens: (1) to establish its affirmative defense of statutory immunity, and (2) to demonstrate the absence of a genuine issue of material fact to show that it is entitled to summary judgment." *Elias* at ¶ 22, citing *Nationstar Mtge., L.L.C. v. Mielcarek*, 9th Dist. Lorain No. 15CA010748, 2016-Ohio-60, ¶ 11; *Dresher*, 75 Ohio St.3d at 292-293, 662 N.E.2d 264. Rather than demonstrating that its sovereign immunity was restored by a R.C. 2744.03 affirmative defense, SORTA attempts to prematurely shift the burden to the Franks. *See Elias* at ¶ 22-23. However, "as both the party asserting the affirmative defense and the party moving for summary judgment, the burden was upon [SORTA] to show that it was entitled to summary judgment on the issue of the applicability of a defense stated in R.C. 2744.03(A)." *Elias* at ¶ 23.

**{¶35}** In its summary-judgment motion, SORTA neglected to cite to any relevant authority, reference any part of the record, or present any meaningful argument to support the contention that its actions were a proper exercise of discretion. *See* Civ.R. 56; *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. Therefore, we conclude that SORTA failed to meet its burden to show that immunity would be

15

reinstated under R.C. 2744.03(A)(3) or (5). Accordingly, the trial court did not err by denying SORTA and Patrick's motion for summary judgment on the issue of SORTA's claim of immunity under R.C. Chapter 2744. The third assignment of error is overruled.

### III. Conclusion

{¶36} We therefore overrule SORTA and Patrick's second and third assignments of error and affirm the judgment of the trial court, in part. We dismiss the appeal in part as it relates to the first assignment of error, alleging that the trial court erred in granting the Franks leave to amend their complaint, because we lack jurisdiction over that issue.

Judgment accordingly.

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

16