[Cite as *Hill v. Kiernan*, 2025-Ohio-5518.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BRYAN K. HILL,                          :

    Plaintiff-Appellee,           :

                                       No.  114964

    v.                             :

SEAN KIERNAN, ET AL.,                   :

    Defendants-Appellants.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:**  December 11, 2025

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-23-990002

---

### *Appearances:*

Tsilimos, Dolesh, and Pena, LLC, Emily Jean Stolfer, and Joshua Dolesh, *for appellee* Bryan K. Hill.

Brian P. Scherf, *for appellees* Lanesha Henderson and Minors.

Mark D. Griffin, City of Cleveland Director of Law, and Dylan Ford and Affan Ali, Assistant Directors of Law, *for appellants.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1}    This appeal asks us to determine whether defendants-appellants City of Cleveland ("Cleveland") and Sean Kiernan ("Kiernan") are entitled to immunity

from civil liability under R.C. Ch. 2744 as a matter of law for Kiernan's actions in connection with a motor vehicle accident involving plaintiff-appellee Bryan Hill ("Hill") and cross-claim plaintiff-appellee Lanesha Henderson ("Henderson"). As genuine issues of material fact exist regarding the cause of the accident and whether Kiernan's actions rise to the level of willful, wanton, or reckless conduct, we affirm the trial court's judgment denying summary judgment to Cleveland and Kiernan in this matter and remand the case for further proceedings.

## I. Procedural and Substantive Facts

{¶ 2} Kiernan is a police officer employed by Cleveland. He graduated from the police academy in January 2019 and had worked for Cleveland as a patrol officer since that time. Kiernan worked third shift (typically overnight from 9:00 p.m. to 6:00 a.m.). He testified during his deposition that he had no fatigue issues working this shift. Kiernan further testified that he took sleep hygiene seriously. For example, he had blackout curtains in his room, kept a door stop under the door so he was not interrupted while sleeping during the day, and maintained a set regimen of wake and sleep hours.

{¶ 3} On September 15-16, 2022, Kiernan was on duty beginning his shift at 8:00 p.m. that evening. At approximately 11:15 p.m. on the 15th, Kiernan was dispatched to pick up a rape kit from Marymount Hospital. The rape kit included two items of evidence that needed to be delivered as soon as possible to separate locations. First, biological specimens had to be delivered to the county medical examiner's office so they could be refrigerated for preservation. Second, the victim's

clothing had to be delivered to the Fourth District police station for use by the assigned detective. Kiernan testified that timely delivery of the rape kit to both the county medical examiner's office and the police station was essential to the investigation and prioritized by him and Cleveland. In fact, Kiernan was not permitted to accept any additional assignments until delivery of the rape kit was complete.

{¶ 4} Kiernan delivered the biological samples to the county medical examiner's office at approximately 12:45 a.m. He immediately proceeded to deliver the victim's clothing to the Fourth District police station located at 9333 Kinsman Road. While he characterized delivering the rape kit as soon as possible as an emergency, Kiernan did not activate his lights or sirens because this type of delivery was not a "life or death" emergency and he did not need to "get everyone out of his way."

{¶ 5} Kiernan's route to the station took him southbound on E. 116th Street. As he proceeded southbound on E. 116th Street, Kiernan approached two intersections. The traffic light was red as he approached the first intersection of E. 116th Street and Larchmere Boulevard. He did not activate his lights or sirens. Kiernan slowed to a stop, checked for traffic, and continued through the intersection slowly accelerating even though the light was still red.

{¶ 6} Seconds later, Kiernan approached the intersection of E. 116th Street and Shaker Boulevard. The traffic light was red. He did not slow down or stop, but

rather, Kiernan proceeded immediately through the intersection without his lights or sirens activated

{¶ 7} Kiernan's vehicle was struck by Henderson's vehicle in the intersection, which was traveling on Shaker Boulevard and lawfully proceeding through the intersection. Their collision caused both vehicles to collide with Hill's vehicle, which was stopped at the red light heading northbound E. 116th Street. Kiernan's body-cam video showed that his hands never left the steering wheel during the accident and he was able to immediately activate his body-cam following the accident.[1]

{¶ 8} After the accident, Kiernan was interviewed by Sergeant Edgerton at the hospital. He told Sergeant Edgerton that he did not remember the accident.[2] Kiernan further stated that the last thing he remembered was stopping at the intersection of E. 116th Street and Larchmere Boulevard. He also stated that he believed that "the light had turned green because he would not have continued through the intersection" otherwise. Kiernan suffered a concussion and was unable to return to work for more than three weeks.

{¶ 9} In December 2023, Hill filed this action against Kiernan, Cleveland, and Henderson. At the time of the accident, Henderson was in the process of

---

[1] Kiernan's body-cam video was activated during the accident. The accident is recorded and part of the record in this matter because it was authenticated as part of Kiernan's deposition testimony.

[2] Sergeant Edgerton's body cam was activated as he interviewed Kiernan at the hospital and was authenticated as part of Kiernan's deposition testimony.

making a "DoorDash" delivery as well as driving a vehicle that did not belong to her. Thus, Hill also filed claims against DoorDash, Inc. and Rosalind Knox, the owner of the vehicle that Henderson was driving. In turn, Henderson filed a cross-claim against Kiernan and Cleveland on behalf of herself and her two minor children who were also in the vehicle. Subsequently, Hill dismissed his claims against Henderson, DoorDash, Inc., and Knox.

{¶ 10} During his deposition, Kiernan testified that he did not remember the accident. He stated that the last thing he remembered from that night is traveling through the first intersection at E. 116th Street and Larchmere Boulevard. Kiernan also testified, "I don't know . . . if I fell asleep" or "just lost attention for a second and I went through the light." He did not know if he fell asleep or why he would have fallen asleep.

{¶ 11} Also, during his deposition, Kiernan acknowledged that police officers are required to follow traffic laws when their lights are not activated. He testified that he was familiar with the intersection where the accident occurred. He indicated that he did not like it because "there's always stuff going on at that gas station that you could get roped into if you're at that intersection and you're trying to get to something else." The two gas stations located there were open 24-hours and had "steady traffic." He also stated that the intersection had obstructed views in all directions, it was a "nightmare" if there was "a bunch of traffic," lots of bus accidents occur at the intersection, and the traffic lights are not timed correctly. At time of the crash, however, he noted that there was not a lot of traffic because it was

1:00 a.m. but he also indicated there was steady traffic because of the 24-hour gas stations.

{¶ 12} Kiernan discussed the stress in his personal life arising from medical appointments for his wife. He noted that around the time of the accident, he was behind on sleep because of both the extra hours of work and the need to attend medical appointments when he would normally be sleeping.

{¶ 13} Kiernan also discussed the current police shortage in Cleveland and the pressure to work extra hours because of the shortage. He admitted he felt pressure to reduce response time. Immediately before the accident, Kiernan was informed that his next assignment after delivery of the rape kit was for a high priority stolen vehicle.

{¶ 14} After discovery concluded, Kiernan and Cleveland jointly moved for summary judgment seeking dismissal of all claims based on statutory immunity under R.C. 2744.02 and 2744.03. On March 26, 2025, the trial court denied the motion for summary judgment because "there are multiple issues of material fact." This appeal follows.

## II. Law and Analysis

### A. Appellate Standard of Review

{¶ 15} We review an appeal from summary judgment under a de novo standard. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We afford no deference to the trial court's decision and independently review the record to

determine whether summary judgment is appropriate. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192 (8th Dist. 1997).

{¶ 16} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that

> (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.

*State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191 (1996). The moving party carries an initial burden of setting forth undisputed specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).

## B. Assignment of Error No. 1 — Political-Subdivision Immunity Under R.C. Ch. 2744.02

{¶ 17} The first assignment of error addresses whether the trial court erred in denying summary judgment to Cleveland. Cleveland argues that it is entitled to immunity from liability pursuant to R.C. 2744.02. Specifically, Cleveland contends that Kiernan's actions, while possibly negligent, do not constitute willful or wanton misconduct as a matter of law. Therefore, none of the exceptions to immunity under R.C. 2744.02 are applicable and summary judgment is proper. Because genuine issues of material fact exist regarding the cause of the accident and whether

Kiernan's conduct rises to the level of willful or wanton misconduct, we overrule appellants' first assignment of error.

{¶ 18} R.C. 2744.02 governs the immunity of a political subdivision. The Ohio Supreme Court has established a three-tier analysis to determine whether a political subdivision is entitled to immunity under R.C. 2744.02. *See, e.g., Colbert v. Cleveland*, 2003-Ohio-3319, ¶ 7; *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 555-557 (2000). The first tier provides for a general grant of immunity for any act or omission of the political subdivision or its employees in connection with a governmental or proprietary function. *Colbert* at ¶ 7; *Liming* at 556-557; R.C. 2744.02(A)(1). R.C. 2744.01(F) defines a political subdivision to include municipal corporations such as Cleveland. R.C. 2744.01(C)(2) defines a governmental function to include the "provision of police." In this appeal, the parties do not dispute that tier one of this analysis is satisfied and Cleveland enjoys a general presumption of immunity. *Robinson v. Cleveland*, 2024-Ohio-969, ¶ 17 (8th Dist.).

{¶ 19} But this immunity is not absolute and may be revoked under the second tier of the analysis if one of the five exceptions codified in R.C. 2744.02(B)(1)-(5) apply. *Colbert* at ¶ 8; *Carter v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). Applicable here is R.C. 2744.02(B)(1) that provides that a political subdivision is "liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." For purposes of this

appeal, Cleveland does not appear to deny that Kiernan may have been negligent in his operation of a motor vehicle within the scope of his employment and authority with Cleveland. Thus, Cleveland is deprived of immunity at this stage of the analysis.

{¶ 20} Cleveland's immunity, however, may be restored if one of the defenses identified under R.C. 2744(B)(1)(a)–(c) are applicable. Relevant here, R.C. 2744(B)(1)(a) provides that the following is a full defense to liability:

> (a) A member of the municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct.

{¶ 21} Thus, under this full defense to liability, Cleveland must demonstrate that (1) Kiernan is a member of its police department; (2) he was responding to an emergency call; and (3) his operation of the motor vehicle did not constitute willful or wanton misconduct. *Robinson,* 2024-Ohio-969, at ¶ 18 (8th Dist.), quoting *Hale v. Toth*, 2023-Ohio-2954, ¶ 25 (8th Dist.). Again, for purposes of this appeal, the parties also do not dispute that Kiernan is a police officer employed by Cleveland and was responding to an emergency call at the time of the accident. Thus, the first and second requirements to establish Cleveland's defense to liability are satisfied.

{¶ 22} The only remaining issue under R.C. 2744(B)(1)(a) is whether genuine issues of material fact remain regarding whether Kiernan's operation of his motor vehicle constituted willful or wanton misconduct. In *Anderson v. Massillon*,

2012-Ohio-5711, the Ohio Supreme Court clarified the definitions of these two terms as follows:

> Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.
>
> Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result.

*Id.* at paragraphs two and three of the syllabus. Notably, the *Anderson* Court also confirmed that prior definitional language of wanton misconduct cited by Cleveland in its briefing requiring a showing of "a disposition to perversity" had been abandoned by the court in *Hawkins v. Ivy*, 50 Ohio St.2d 114, 117 (1977). *Anderson* at ¶ 27-28.

{¶ 23} "Typically, issues regarding wantonness or willfulness are questions for the jury to decide; however, the standard for showing such conduct is high." *Taylor v. Cleveland*, 2012-Ohio-3369, ¶ 22 (8th Dist.); *accord Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994). If the facts show that reasonable minds could not conclude that the pertinent conduct meets that high standard, a court may determine this issue as a matter of law. *Id.* When determining whether such conduct rises to the level of willful or wanton as a matter of law, a court

considers "a totality of the circumstances." *Stevenson v. Prettyman*, 2011-Ohio-718, ¶ 43 (8th Dist.).

**{¶ 24}** However, Ohio case law also supports the "notion that questions of fact regarding immunity are enough to overcome summary judgment." *Knox v. Hetrick*, 2009-Ohio-1359, ¶ 37 (8th Dist.). With regard to R.C. Ch. 2744, this court has held:

> This court must conduct a de novo review of a trial court's decision overruling a motion for summary judgment in which a political subdivision or its employee seeks immunity. *Hubbell v. Xenia*, 2007-Ohio-4839, ¶ 21. If, after that review, only questions of law remain, the court of appeals may resolve the appeal. "If a genuine issue of material fact remains, the court of appeals can remand the case to the trial court for further development of the facts necessary to resolve the immunity issue." *Id.*

*Pakeer v. Cleveland*, 2023-Ohio-4213, ¶ 8 (8th Dist.); *see also Frank v. S.W. Ohio Regional Transit Auth.*, 2020-Ohio-5497, ¶ 16 (1st Dist.). Accordingly, if we find that genuine issues of material fact remain based on our review of the record, summary judgment should not be granted.

**{¶ 25}** Initially, we note that Kiernan repeatedly testified at deposition that he did not remember the accident. However, at different times in the record, Kiernan also stated that he may have "fallen asleep," "been momentarily distracted," "believed the light was green," or unexpectedly lost consciousness. Because he cannot remember the accident, Hill and Henderson also argue that he may have made a conscious decision to drive through the intersection even though it was red. These scenarios raise issues of material fact regarding the cause of the accident.

**{¶ 26}** Kiernan's testimony also provided evidence that imply his actions at the time of the accident could have been motivated by pressure to decrease response time and the urgency of completing delivery of the rape kit. There was also testimony regarding additional stress and fatigue in his personal life that could have contributed to the accident.

**{¶ 27}** Considering the totality of the circumstances — Kiernan's conflicting statements regarding why he entered the intersection including that he may have fallen asleep, lack of memory of the accident, and the evidence of outside factors possibly contributing to his state of mind during the accident — we find that genuine issues of material fact exist regarding the cause of the accident and whether Kiernan's conduct rises to the level of wantonness. *See, e.g., Bueno v. Cleveland*, 2017-Ohio-8881, ¶ 10, 12 (8th Dist.) (finding genuine issues of material fact exist as to whether government employee operated vehicle in wanton, willful, or reckless manner when he could not remember the details of the accident or even being involved in the accident). In light of the disputed material facts of this case, summary judgment is not appropriate under Civ.R. 56(C) and the trial court's decision denying summary judgment to Cleveland is affirmed. Assignment of error No. 1 is overruled.

## C. Political-Subdivision-Employee Immunity Under R.C. 2744.03(A)(6)

**{¶ 28}** The second assignment of error argues that the trial court erred in denying summary judgment to Kiernan. Kiernan asserts that he is entitled to

immunity under R.C. 2744.03(A)(6) for his actions in connection with the accident. Specifically, Kiernan argues that he did not act with a malicious purpose, in bad faith, or in a wanton or reckless manner as a matter of law. Thus, summary judgment is proper. Despite these arguments, we find that genuine issues of material fact exist regarding the cause of the accident and whether Kiernan acted in either a wanton or reckless manner. Therefore, we overrule this assignment of error and affirm the trial court's denial of summary judgment.

{¶ 29} R.C. 2744.03(A)(6) governs whether Kiernan, as an employee of a political subdivision, is immune from civil liability. Specifically, R.C. 2744.03(A)(6) provides that an employee is immune from liability unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

{¶ 30} The applicable exception to immunity in this case is whether there is a genuine issue of material fact as to whether Kiernan's acts or omissions were "with malicious purpose, in bad faith, or in a wanton or reckless manner" under R.C. 2744.06(A)(6)(b). Under this subsection, "the degree of care in imposing liability for an employee of a political subdivision in his or her individual capacity is slightly different." *Hale*, 2023-Ohio-2954, at ¶ 41 (8th Dist.). Specifically, a political

subdivision has a full defense to liability when the conduct involved is not willful or wanton. *Id.* But an employee is immune from liability if the conduct involved is not done with a malicious purpose, in bad faith, or in a wanton or reckless manner. *Id.* Thus, "'by implication, an employee is immune from liability for negligent acts or omissions.'" *Id.*, quoting *Anderson*, 2012-Ohio-5711, at ¶ 23.

{¶ 31} There are no allegations that Keirnan acted with a malicious purpose or in bad faith in this case. Accordingly, we will address only whether there is an issue of material fact as to whether Kiernan's acts or omissions may constitute wanton or reckless conduct.

{¶ 32} As discussed above, the Ohio Supreme Court in *Anderson* defined wanton misconduct as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson* at paragraph three of the syllabus. The *Anderson* Court also defined reckless conduct as "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

{¶ 33} Again, issues regarding recklessness and wantonness are generally questions for the jury to decide. *Stevenson*, 2011-Ohio-718, at ¶ 43 (8th Dist.). While this standard is high, summary judgment under Civ.R. 56(C) remains improper if genuine issues of material fact exist regarding whether the subject conduct can be characterized as wanton or reckless. *Id.; see also Pakeer*, 2023-

Ohio-4213, at ¶ 8 (8th Dist.); *see also Frank*, 2020-Ohio-5497, at ¶ 16 (1st Dist.). We make this determination considering the totality of the circumstances. *Stevenson* at ¶ 43.

**{¶ 34}** For the same reasons discussed under the first assignment of error, we find that there are genuine issues of material fact regarding the cause of the accident and whether Kiernan's conduct was wanton or reckless. These factual issues are properly resolved by the factfinder. Thus, the trial court's decision denying Kiernan's motion for summary judgment is affirmed. Assignment of error No. 2 is overruled.

**{¶ 35}** Judgment affirmed, and case remanded.

It is ordered that appellees recover from appellants the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

LISA B. FORBES, J., and
ANITA LASTER MAYS, J., CONCUR